## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SHENANDOAH WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-01913-JEO |
| | ) | |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Shenandoah Williams brings this action pursuant to 42 U.S.C. §
405(g), seeking review of the final decision of the Acting Commissioner of Social
Security ("Commissioner") denying his applications for disability insurance
benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1).[1] The case
has been assigned to the undersigned United States Magistrate Judge pursuant to
this court's general order of reference. The parties have consented to the
jurisdiction of this court for disposition of the matter. (*See* Doc. 17). *See* 28
U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant
law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of
the Court to the pleadings, motions, and other materials in the court file, as reflected on the
docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I.  PROCEDURAL HISTORY

Plaintiff protectively filed his current DIB and SSI applications on July 18, 2013, alleging he became disabled beginning November 7, 2012.  (R. 11).  They were initially denied.  An administrative law judge ("ALJ") held a video hearing on March 3, 2015 (R. 11) and issued an unfavorable decision on May 20, 2015 (R. 11-22).  Plaintiff submitted his appeal to the Appeals Council.  Upon consideration, the Appeals Council found no reason to review the ALJ's decision.  (R. 1).  Plaintiff's request for review was denied on May 9, 2016.  (R. 1).

# II.  FACTS

Plaintiff was 50 years old at the time of the ALJ's decision.  He has a tenth grade education and has worked in the past as a truck driver, forklift operator, plating equipment tender, and concrete mixing truck driver.  (R. 37, 176, 181).  Plaintiff alleged onset of disability due to gout, high blood pressure, obesity, anxiety, arthritis, and diabetes mellitus.  (R. 46, 175, 200).

Following a hearing, the ALJ found that Plaintiff had the following medically determinable impairments: morbid obesity, dyspnea, gout, estimated borderline to low average intellectual functioning, and depressive disorder.  (R. 13).  He also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 14). He further found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) that did not require: (1) climbing ropes, ladders, or scaffolds; (2) work at unprotected heights or with hazardous machinery; (3) concentrated exposure to temperature extremes; (4) more than frequent interaction with co-workers and supervisors; and (5) more than occasional contact with the public. (R. 57). Based on that RFC finding and testimony from a vocational expert ("VE"), the ALJ concluded Plaintiff could not perform his past relevant work as a truck driver, forklift operator, plating attendant tender, or concrete mixing truck driver. (R. 20). However, based on his age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as a sorter and final sorter. (R. 21). Accordingly, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, since November 7, 2012, through the date of his decision. (R. 22).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper

legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. §

1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five

step analysis.  20 C.F.R. §§ 404.1520(a)(4).  Specifically, the Commissioner must

determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful
> activity; (2) has a severe medically determinable physical or mental
> impairment; (3) has such an impairment that meets or equals a Listing
> and meets the duration requirements; (4) can perform his past relevant
> work, in light of his residual functional capacity; and (5) can make an
> adjustment to other work, in light of his residual functional capacity,
> age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[2] (citing 20

C.F.R. § 404.1520(a)(4)).  The plaintiff bears the burden of proving that he was

disabled within the meaning of the Social Security Act.  *Moore v. Barnhart*, 405

F.3d 1208, 1211 (11th Cir. 2005).  The applicable "regulations place a very heavy

---

[2]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered
binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V.  DISCUSSION

Plaintiff argues five grounds of error: First, the ALJ failed to state with "some measure of clarity" his reason for "repudiating the opinion of Dr. David Wilson"; Second, the ALJ failed to state adequate reasons for finding Plaintiff not credible; Third, the ALJ failed to give proper consideration to Plaintiff's obesity; Fourth, the ALJ's decision is not supported by substantial evidence; and Fifth, the ALJ failed to assess the intensity and persistence of Plaintiff's symptoms pursuant to SSR 16-3p.  (Doc. 13 at 3).  Each argument will be addressed below.

### A.    Dr. David Wilson

Plaintiff argues that the ALJ failed to clearly state his reasons for repudiating the opinion of consultative psychological examiner Dr. Wilson.  (*Id*. (Issue 1)).  The Commissioner responds that the ALJ fully evaluated and properly weighed Dr. Wilson's opinion.  (Doc. 14 at 6).  The court agrees with the Commissioner.

Dr. Wilson examined Plaintiff one time on September 25, 2013.  He diagnosed Plaintiff as suffering from depressive disorder, gout, hypertension, and morbid obesity.  He also stated that Plaintiff's gout "could possibly make him

unable to maintain a job.  He has cognitive deficits and he is only capable of doing some type of manual labor job – and his gout and morbid obesity could make those jobs very difficult.  He is also very depressed and this will also make it very difficult for him to work."  (R. 372).  Dr. Wilson also assessed Plaintiff "as having a GAF of 50, indicating psychological symptomology and mental functional limitations of disabling proportions." (R. 18).

When evaluating a disability claim, it is well settled that an ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sarfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  The opinion of a one-time examiner, i.e., non-treating doctors, is not entitled to deference or special consideration.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (stating that the opinion of a doctor who examines a claimant on only one occasion is not entitled to great weight).  In assessing Dr. Wilson's opinions, the ALJ stated: (1) "the underlying findings of medical and non-medical evidence are found to be more relevant in determining the claimant's residual functional capacity than a GAF score, which lacks reliability in disability determinations"; (2) "[i]n terms of [Plaintiff's] borderline intellectual functioning, the record contains no evidence of a significant deficit in adaptive functioning"; (3) the determination of whether Plaintiff is disabled is

reserved for the Commissioner; and (4) Dr. Wilson's opinions are inconsistent with the remainder of the record.  (R. 19-20).  The court finds that the ALJ properly weighed Dr. Wilson's opinions.

With regard to the GAF score, "The Commissioner [has] ... declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and ... [has] indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (internal quotations omitted) (citing 60 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)).  While a GAF score distills an individual's symptoms and functioning to a single number, an ALJ assessing a claimant's RFC must consider the claimant's "'functional limitations or restrictions and assess ... [his] work-related abilities on a function by function basis.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184).  The court also notes that the latest edition of the Manual of Mental Disorders has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). Plaintiff's GAF score was considered by the ALJ and found to be less relevant and reliable in determining Plaintiff's RFC than the other medical and non-medical

evidence. (R. 19). Plaintiff has failed to demonstrate any error in this analysis.

Concerning Dr. Wilson's opinion that Plaintiff has a borderline intellectual functioning, the ALJ is correct that the record does not contain evidence of a significant deficit in adaptive functioning. To the contrary, the record evidences Plaintiff's ability to maintain a successful work history at a semi-skilled level without being terminated due to mental deficiencies. (R. 19, 36-37, 73-74, 140-46, 155-64).

To the extent Dr. Wilson opined concerning whether Plaintiff is disabled or able to work, the ALJ is correct these are matters reserved for the Commissioner. Whether Plaintiff is "disabled" is not a medical opinion, but is "an issue reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p. Although doctors' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1515(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c), 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p.

Finally, the ALJ correctly observed that Dr. Wilson's opinions are

inconsistent with the remainder of the record. (R. 19-20). He noted that the Quality of Life Health Services treatment notes showed that "prior to and since the alleged onset date, [Plaintiff] has had no ongoing complaints of depression, and that during the treatment period November 2012 through February 2015, [Plaintiff] consistently denied having anxiety or depression." (R. 19-20; *see*, *e.g.*, R. 350, 354, 358, 363, 444, 452, 459, 466). Additionally, Plaintiff's psychiatric examinations were normal. (*See*, *e.g.*, R. 351, 355, 359, 364, 447, 455, 462, 467). The ALJ also found that "since the alleged onset date, [Plaintiff] has no history of mental health treatment by a psychiatrist or a mental health center and has not required psychotropic medication, emergency room treatment, or a psychiatric hospital admission for treatment of any type of mental disorder." (R. 20). Plaintiff's challenge is without merit.

The ALJ's findings concerning Dr. Wilson are also supported by the examination of consultative psychological examiner Dr. Mary Arnold and the opinion of the state agency psychological expert, Dr. Robert Estock. Dr. Arnold's examination shows an essentially normal mental status. She did state that while Plaintiff is estimated to have a Full Scale Intelligence Quotient in the borderline to low average range, he is alert and oriented, he does reason abstractly, he is able to attain his goals, and he can manage his funds. (R. 316-17). Dr. Estock, who has

familiarity with the disability program, provided specific opinions regarding Plaintiff's assessment, including that he has an ability to understand and remember short, simple instructions and sustain attention/concentration for two-hour periods with customary work breaks, and that Plaintiff requires non-intensive/nonthreatening supervision and infrequent and well-explained/gradually-introduced workplace changes.  (R. 20, 65-74).

In sum, the court finds that the ALJ's decision to give Dr. Wilson's opinions "little weight" is supported by substantial evidence.  To the extent Plaintiff argues that the ALJ substituted his opinion for the opinions of Dr. Wilson (*see* doc. 13 at 16), the court disagrees.  The ALJ clearly evaluated Dr. Wilson's opinions in conjunction with the other evidence of record in determining Plaintiff's RFC[3] and properly afforded "little weight" to his conclusory opinions.  (R. 19).

## B.      Plaintiff's Credibility

Plaintiff argues the ALJ did not give adequate reasons for refusing to credit his testimony.  (Doc. 13 at 20-21 (Issue 2)).  He also argues that the case should be remanded because the ALJ failed to assess the intensity and persistence of his symptoms pursuant to SSR 16-3p, which became effective March 28, 2016, after

---

[3]Plaintiff's RFC is based on an evaluation of all the relevant evidence, including the medical evidence and his statements concerning his abilities and limitations.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p.

the ALJ issued his decision.  (*Id*. at 27-36 (Issue 5)).  The court will address the

applicability of SSR 16-3p first.

### 1.    SSR 16-3p

In response to Plaintiff's argument that the case should be remanded for

assessment of his symptoms pursuant to SSR 16-3p, the Commissioner asserts,

correctly, that SSR 16-3p does not apply retroactively.  (Doc. 14 at 11 and Doc.

18).  The Eleventh Circuit Court of Appeals held on November 6, 2017, that SSR

16-3p applies prospectively and does not provide a basis for remand in prior

matters.  *Hargress v. Soc. Sec. Admin, Comm'r*, 874 F.3d 1284, 1290 (11th Cir.

2017); *see also Green v. Soc. Sec. Admin*, *Comm'r*, 695 F. App'x 516, 520 (11th

Cir. 2017).[4]  Here, the ALJ issued his opinion on May 20, 2015.  SSR 16-3p

became effective on March 28, 2016.  Accordingly, Plaintiff's reliance on SSR 16-

3p as a basis for a remand (his fifth issue) is without merit.

### 2.    Plaintiff's Substantive Claim

#### a.    Generally

Plaintiff also contends that the ALJ failed to state adequate reasons for

finding him not credible.  The Commissioner responds that substantial evidence

---

[4]Plaintiff filed a supplemental response stating that counsel has filed a petition for
rehearing in *Green* concerning, among other things, the retroactivity of SSR 16-3p.  (Doc. 19 at
1).

supports the ALJ's determination that Plaintiff's subjective complaints of disabling limitations were not entirely credible. (Doc. 14 at 15-16).

As noted previously, Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512 (a) & (c), 416.912(a) & (c) (2015); *Moore,* 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Specifically, Plaintiff has the burden to provide relevant medical and other evidence he believes will prove his alleged disability resulting from his physical or mental impairments. *See* 20 C.F.R. §§ 404.1512(a)-(b), 416.912(a)-(b). In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

In addressing Plaintiff's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt*

> *v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ
> discredits subjective testimony, he must articulate explicit and
> adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007,
> 1011 (11th Cir. 1987).  Failure to articulate the reasons for
> discrediting subjective testimony requires, as a matter of law, that the
> testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541,
> 1545 (11th Cir. 1988).

*Wilson*, 284 F.3d at 1225; *see also* 20 C.F.R. §§ 404.1529, 416.929.  In

determining whether substantial evidence supports an ALJ's credibility

determination, "[t]he question is not . . . whether the ALJ could have reasonably

credited [the claimant's] testimony, but whether the ALJ was clearly wrong to

discredit it."  *Werner v. Comm'r of Soc. Sec*., 421 F. App'x 935, 939 (11th Cir.

2011).

When evaluating a claimant's statements regarding the intensity,

persistence, or limiting effects of his symptoms, the ALJ considers all the evidence

– objective and subjective.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The

ALJ may consider the nature of a claimant's symptoms, the effectiveness of

medication, a claimant's method of treatment, a claimant's activities, measures a

claimant takes to relieve symptoms, and any conflicts between a claimant's

statements and the rest of the evidence.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4),

416.929(c)(3), (4).  The ALJ is not required explicitly to conduct a symptom

analysis, but the reasons for his findings must be clear enough that they are

obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

### b.    Analysis of Plaintiff's Claim

Review of this claim is difficult because Plaintiff does not articulate any deficiencies in the ALJ's reasoning. (*See* Doc. 13 at 20, Doc. 15 at 6, Doc. 19 at 2). Regardless, this court must be satisfied that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints of disabling limitations were not credible.

The ALJ stated that "the evidence as a whole fails to confirm a disabling level of functional limitations caused by any physical or mental impairment." (R. 16). As noted before, the ALJ found that Plaintiff had the following severe impairments: morbid obesity, dyspena, gout, estimated borderline to low average intellectual functioning, and depressive disorder. (R. 13). Plaintiff does not dispute this finding. Rather, he challenges the lack of reasons for the ALJ's decision. Accordingly, the court will review the evidence in the record as it concerns Plaintiff's statements regarding the intensity, persistence, and

functionally limiting effects of his symptoms.[5]

As to Plaintiff's dyspena, the ALJ found that although Plaintiff received treatment for dyspnea,[6] his complaints were intermittent. Additionally, his cardiovascular and pulmonary evaluations typically were within normal limits. (R. 17, 419, 424, 429, 433, 438, 447, 455, 462, 467).

Concerning Plaintiff's gout, the ALJ found that since his diagnosis in 2006, Plaintiff experienced numerous periods ranging from months to over a year where he had no complaints. Additionally, a physician noted at one point that the condition was under control with medication. (R. 17, 239, 262, 340, 345, 436).

Concerning Plaintiff's mental impairment, as discussed previously, despite Plaintiff's limitations, he was able to maintain semi-skilled employment for years. Additionally, the record reveals he had no difficulties communicating with medical personnel. He also is able to take care of himself. As noted by the ALJ, "[a]lthough ... [Plaintiff] indicated his daily living activities were significantly limited, reports from consulting physicians show [he] reported being independent with daily living activities and that his typical day consisted of maintaining

---

[5] The court will address Plaintiff's morbid obesity in the next section of this opinion, which discusses Plaintiff's claim that the ALJ did not properly consider his obesity.

[6] "Dyspena is the feeling that you can't catch your breath or get enough air in your lungs." https://www.webmd.com/lung/shortness-breath-dyspnea#1 (Last visited Feb. 27, 2018).

personal care, performing a variety of household chores, cooking meals, doing the laundry and yard work, and going fishing." (R. 15; *see also* 189-95, 317, 320, 375). Plaintiff's activities are thus not indicative of the disabling limitations he alleges.

Concerning Plaintiff's depressive disorder, the ALJ found that he "has had no ongoing complaint of depression, and that during the treatment period November 2012 through February 2015, [Plaintiff] consistently denied having anxiety or depression." (R. 19-20). The ALJ also found that "since the alleged onset date, [Plaintiff] has no history of mental health treatment by a psychiatrist or a mental health center and has not required psychotropic medication, emergency room treatment, or a psychiatric hospital admission for treatment of any type of mental disorder." (R. 20).

Plaintiff's treatment history, the unremarkable objective medical findings, and Plaintiff's activities all undermine his subjective complaints of disabling symptoms and additional limitations. The ALJ's determination is supported by substantial evidence. Plaintiff's claim is due to fail.

## C. Plaintiff's Obesity

Plaintiff next argues that the ALJ failed to give proper consideration to his obesity in evaluating whether he is disabled. (Doc. 13 at 21-22 (Issue 3)). The

Commissioner disagrees, asserting that the ALJ considered Plaintiff's obesity, and its combined effect on Plaintiff's impairments, in assessing his RFC. (Doc. 14 at 19). The court agrees with the Commissioner.

Plaintiff's obesity is well documented. His weight ranges from 400-457 pounds. He has a body mass index ("BMI") around 57.4. (*See* R. 444). The ALJ found obesity to be a severe impairment. In discussing Plaintiff's RFC, the ALJ stated that the examining medical consultants, Dr. William Lievens and Dr. Ronald Borlaza, diagnosed Plaintiff with morbid obesity. The ALJ then stated:

> [P]hysical examinations from Quality of Life Health Services and
> Drs. Lievens and Borlaza have shown the claimant to have normal
> gait and station, normal muscle strength throughout all extremities,
> and good range of motion of most major joints. Therefore, the [ALJ]
> finds that there is no objective medical evidence that the claimant's
> obesity has affected a major weight bearing joint or has resulted in
> functional limitations of his ability to perform exertional and/or
> postural activities on a regular and sustained basis as required by SSR
> 02-01p.[7]

(R. 18).

The ALJ gave proper consideration to Plaintiff's obesity. He correctly found, based on the record, that the objective medical evidence does not show that Plaintiff was disabled. The ALJ considered Plaintiff's obesity when assessing his

---

[7]This ruling provides "guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act...." SSR 02-1p, 2002 WL 34686281.

RFC. Specifically, Dr. Borlaza noted Plaintiff's weight when explaining his exertional limitation conclusions. (R. 378). The ALJ gave Dr. Borlaza's opinion regarding Plaintiff's limitations significant weight. (R. 19). To the extent Dr. Borlaza appears to attribute Plaintiff's limitations to obesity, the ALJ incorporated those limitations into his assessment of Plaintiff's RFC. (R. 15, 19). Substantial evidence supports the ALJ's assessment of Plaintiff's RFC, and Plaintiff failed to prove his obesity or physical condition imposed additional limitations on his ability to work.

To the extent Plaintiff cites to medical notes recording his weight (doc. 13 at 21 (citing R. 222-313)), that does not demonstrate he has additional work-related limitations. *See Moore*, 405 F.3d at 1213 n.6 (stating that the mere existence of impairments does not reveal the extent to which they limit a claimant's ability to work or undermine the ALJ's determination in that regard); *see also Wind*, 133 F. App'x at 690 ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter*, 791 F.2d at 1547).

To the extent Plaintiff cites to his hearing testimony that he was "unable to walk well due to his arthritis" and then argues, "[a]lthough not specifically stated,

[his] weight and pain precluded walking and working" (doc. 13 at 22), the court is not impressed.  This contention is pure argument.  It is not supported by the record.  Plaintiff has failed to meet his burden of showing that he was further limited by his obesity.  This claim is without merit.

## D.    Substantial Evidence

Finally, Plaintiff argues the ALJ's decision is not supported by substantial evidence.  (Doc. 13 at 3, 22-26 (Issue 4)).  Plaintiff asserts that the ALJ did not consider his obesity, hypertension, or diabetes mellitus, particularly as it concerns the hypothetical the ALJ posed to the VE.  (Doc. 13 at 22-23; Doc. 15 at 8-11).  The Commissioner responds that the ALJ properly relied on VE testimony to find Plaintiff was not disabled.  (Doc. 14 at 21).

The use of a VE is well established.[8]  The issue in this instance is whether the hypothetical posed to the VE included all of Plaintiff's relevant impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *see also Winschel v.*

_____

[8]*See* 20 C.F.R. § 404.1566(e) ("Use of vocational experts and other specialists.  If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist.  We will decide whether to use a vocational expert or other specialist."); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (stating that "the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy ... by the use of a vocational expert.  A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.").

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011) (the hypothetical

question posed to the VE must "include or otherwise implicitly account for all of

[a claimant's] impairments").  Plaintiff says it does not and the Commissioner

argues it did.

The ALJ assessed and considered in his determination each of the

conditions mentioned by Plaintiff.[9]  In assessing Plaintiff's ability to work, the

ALJ's hypothetical question properly encompassed the limitations supported by

the record.  The ALJ accounted for Plaintiff's medical conditions, both severe and

non-severe, and his functional limitations by having the VE consider a

hypothetical individual limited by an ability to perform work involving only light

exertion.  (R. 15-16, 21, 37-41).  Plaintiff has not demonstrated any deficiency in

the hypothetical.

To the extent Plaintiff complains that the hypothetical question assumed

that he could work (doc. 13 at 23, doc. 15 at 8),[10] he has not demonstrated that he

could not perform other work.  While Plaintiff's physical condition does limit his

---

[9]While the court previously discussed the ALJ's assessment of Plaintiff's obesity, the ALJ
also considered Plaintiff's hypertension and diabetes mellitus.  The ALJ found that although the
medical evidence included these diagnoses, the conditions were well controlled with medication,
asymptomatic, required no more than sporadic treatment and follow-up, and resolved with
treatment.  (R. 14).  The ALJ then found these conditions to be non-severe.  (*Id.*)

[10]Plaintiff also complains that "[t]here is no medical evidence that [he] can work."  (Doc.
13 at 25, Doc. 15 at 9).

abilities, the ALJ took that into consideration in his hypothetical question and in his overall assessment of the record.  Plaintiff has failed to show that the ALJ's findings are not based on substantial evidence.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed.  An appropriate order will be entered separately.

**DONE,** this the 9th day of March, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge